COLIN P. CALVERT (SBN 275195)
ccalvert@fisherphillips.com
LISA CHINAI (SBN 298017)
lchinai@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile:  (949) 851-0152

Attorneys for Defendants
SIERRA DEVELOPMENT LLC
and THE RIVERSIDE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA GAIL SEWELL, an individual,<br><br>                    Plaintiff,<br><br>          v.<br><br>SIERRA DEVELOPMENT LLC; THE RIVERSIDE COMPANY and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No: 2:25−cv−01940 MAA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SIERRA DEVELOPMENT LLC'S MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS THE PROCEEDINGS**<br><br>*[Concurrently filed with Notice of Motion; Declarations of Lisa Chinai, Chad Thompson, and Udo Waibel; and Proposed Order]*<br><br>**DATE:        June 4, 2025**<br>**TIME:    10:00 a.m.**<br>**COURTROOM:  880, 8th Floor**<br><br>Complaint Filed: March 5, 2025<br>Trial Date:        None set |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT............. 5

II.     STATEMENT OF RELEVANT FACTS...................................... 6

    A.  Sierra Utilized TriNet as a PEO, In Part, to Process Payroll and Administer Certain Personnel Documents, Including But Not Limited to its Binding Arbitration Agreement, the DRP.................................................................................. 6

    B.  Plaintiff Accepted TriNet's DRP and Agreed to Arbitrate Any and All Claims Stemming from Her Employment ............... 7

    C.  Defendant Sierra Requested that Plaintiff Stipulate to Arbitration Pursuant to the DRP, but Plaintiff Has Refused ................................................................................. 8

III.    THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS ..................... 9

    A.  The FAA Governs the DRP.............................................. 10

    B.  The Parties Are Clearly Bound by the DRP ............................. 10

    C.  The DRP Applies to All of Plaintiff's Causes of Action ............. 11

IV.     THE CALIFORNIA ARBITRATION ACT REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS ..................... 12

    A.  California Public Policy Supports Enforcement of the DRP..... 12

    B.  The DRP Exceeds the Minimum Armendariz Requirements ................................................................................. 13

        1.  The DRP Provides for a Neutral Arbitrator.................... 14

        2.  The DRP Provides for More Than Minimal Discovery ................................................................................. 14

        3.  The DRP Requires the Arbitrator to Issue A Written Reasoned Opinion................................................ 15

        4.  The DRP Does Not Limit Plaintiff's Available Remedies................................................................ 15

        5.  The DRP Does Not Require Plaintiff to Pay Any Costs ................................................................................. 15

    C.  Plaintiff's Electronic Signature of the DRP Is Not an Impediment to Its Enforcement........................................ 16

V.      ANY PROVISION DEEMED UNCONSCIONABLE SHOULD BE SEVERED, AND THE REMAINDER OF THE AGREEMENT ENFORCED ...................................... 17

VI.     THIS ENTIRE ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE STAYED PENDING COMPLETION OF BINDING ARBITRATION........................................ 18

VII.    CONCLUSION ........................................................ 19

1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armendariz v. Foundation Health Psychcare Servs., Inc.*
(2000) 24 Cal.4th 83 ...............................................................................*passim*

*AT&T Mobility LLC v. Concepcion et ux.*
(2011) 131 S.Ct. 1740 ....................................................................................... 9

*AT&T Tech., Inc. v. Communication Workers of Am.*
(1986) 475 U.S. 643 .......................................................................................... 9

*Bayscene Resident Negotiators v. Bayscene Mobilehome Park*
(1993) 15 Cal.App.4th 119 ............................................................................. 13

*Circuit City Store, Inc. v. Adams*
(2001) 532 U.S. 105 ..................................................................................... 9, 10

*Coast Plaza Doctors Hospital v. Blue Cross of California*
(2000) 83 Cal.App.4th 677 ............................................................................. 13

*Condee v. Longwood Mgmt. Corp.*
(2001) 88 Cal.App.4th 215 ............................................................................. 11

*EEOC v. Luce, Forward, Hamilton & Scripps*
(9th Cir. 2003) 345 F.3d 742 ............................................................................ 9

*Fittante v. Palm Springs Motors, Inc.*
(2003) 105 Cal.App.4th 708 ........................................................................... 12

*Gilmer v. Interstate/Johnson Lane Corp.*
(1991) 500 U.S. 20 ............................................................................................ 9

*Green Tree Fin. Corp. v. Randolph*
(2000) 531 U.S. 79 ............................................................................................ 9

*Howsam v. Dean Witter Reynolds, Inc.*
(2002) 537 U.S. 79 ....................................................................................... 6, 10

*Johnmohammadi v. Bloomingdale's, Inc.,*
755 F.3d 1072 (9th Cir. 2014) ........................................................................ 19

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
   363 F.3d 1010 (9th Cir. 2004) ........................................................ 18

*Little v. Auto Stiegler, Inc.*
   (2003) 29 Cal.4th 1064 – 1076 .................................................. 17, 18

*McManus v. CIBC World Markets, Corp.*
   (2003) 109 Cal.App.4th 76 ................................................ 12, 17, 18

*Moncharsh v. Heily & Blase*
   (1992) 3 Cal.4th 1 (California has a "strong public policy in favor
   of arbitration") .................................................................... 12

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*
   (1983) 460 U.S. 1 ................................................................ 10

*Oakland-Alameda County Coliseum Authority v. CC Partners*
   (2002) 101 Cal.App.4th 635 (overruled on other grounds) ............... 13

*Rickards v. United Parcel Service, Inc.*
   (2012) 206 Cal.App.4th 1523 ................................................ 16

*SI V, LLC v. FMC Corp.*
   (N.D. Cal 2002) 223 F. Supp. 2d 1059 ..................................... 17

*Southland Corp. v. Keating*
   (1984) 465 U.S. 1 ................................................................ 9

*United Transp. v. Southern Cal. Rapid Transit Dist.*
   (1992) 7 Cal.App.4th 804 .................................................... 13

**Statutes**

9 U.S.C. § 2 ..................................................................... 9, 10

9 U.S.C. § 3 ..................................................................... 12, 18, 19

9 U.S.C. §§ 3-4 ................................................................. 6

Cal. *Civil Code* § 1670.5 ...................................................... 17

Cal. *Code of Civ. Proc.* §§ 1281.2, 1281.4 .............................. 6

3

California *Code of Civil Procedure* section 1281 ................................................8

California Code of Civil Procedure § 1281.2 .......................................................12

California Government Code §12945.7 .................................................................5

California Labor Code §96, and (4)........................................................................5

*Civil Code* § 1633.7, subd. (c) ............................................................................16

**Other Authorities**

Cal. R. Ct. 371 .....................................................................................................11

Local Rule 7............................................................................................................8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS THE PROCEEDINGS

FP 54676883.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff Melissa Gail Sewell's ("Plaintiff") First Amended Complaint asserts four causes of action against Defendant Sierra Development LLC ("Sierra"). Each of Plaintiff's four causes of action arise directly out of, and are related to, Plaintiff's former employment with Sierra. *See* Declaration of Lisa Chinai ("Chinai Dec.") at ¶2 and Exhibit ("Ex.") 1.  Specifically, Plaintiff's First Amended Complaint ("FAC") asserts the following claims against Sierra: (1) Retaliation for taking bereavement leave in violation of California Government Code §12945.7[1], (2) Wrongful termination in violation of public policy, (3) Wrongful termination in violation of California Labor Code §96, and (4) Retaliation in Violation of the Family Medical Leave Act.  Ex. 1. The facts that Plaintiff alleges to support her causes of action arise out her work at Sierra. *See* Chinai Dec. at ¶2 and Ex. 1.

Plaintiff's claims cannot proceed in this court. In conjunction with her employment with Sierra, Plaintiff electronically signed and agreed to the terms of a Dispute Resolution Protocol ("DRP") contained within a Terms and Conditions Agreement ("TCA"), which unequivocally requires Plaintiff to submit "any dispute arising out of or relating to [her] . . . employment with [her] company" to binding arbitration. *See* Declaration of Chad Thompson ("Thompson Dec.") at ¶¶ 10, 14 and Ex. A, §8. TriNet HR III, Inc., a Professional Employer Organization ("PEO"),[2] which Sierra utilized throughout Plaintiff's employment, administered

---

[1] Plaintiff erroneously cites "Retaliation for Taking Bereavement Leave" pursuant to California Labor Code §12945.7 (as opposed to California Government Code §12945.7) in the caption of her FAC.

[2] As a PEO, TriNet HR III, Inc. is engaged in the business of providing administrative related services for its clients/customers (such as Sierra). *See* Thompson Dec. at ¶¶ 2, 3 and Ex. A, §1. TriNet HR III, Inc. is a subsidiary of TriNet Group, Inc. *Id.* As used herein, the term "TriNet" refers to TriNet HR III, Inc., TriNet Group, Inc., and all direct and indirect subsidiaries.

the DRP (contained in the TCA). *See* Declaration of Udo Waibel ("Waibel Dec.") at ¶ 6. Each of Plaintiff's claims are predicated entirely on alleged acts and omissions arising from Plaintiff's employment with Sierra, thereby subjecting Plaintiff's claims to the scope of the DRP that Plaintiff electronically executed. *See* Ex. 1.

As delineated below, the Court should compel Plaintiff to arbitrate her claims pursuant to the Federal Arbitration Act ("FAA") because the DRP is valid, enforceable, and encompasses all of the claims and allegations contained in Plaintiff's FAC. *See* Ex. 1; *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 84; Cal. *Code of Civ. Proc.* §§ 1281.2, 1281.4; 9 U.S.C. §§ 3-4. Moreover, the DRP conforms to and exceeds the minimal requirements for enforceability articulated in *Armendariz v. Foundation Health Psychcare Servs., Inc.* (2000) 24 Cal.4th 83. Finally, the Court should dismiss this litigation, or in the alternative stay the proceedings, pending the outcome of the arbitration. For these reasons, and as discussed more fully below, Defendant Sierra requests that the Court grant the instant Motion in its entirety.

## II.   STATEMENT OF RELEVANT FACTS

### A.   Sierra Utilized TriNet as a PEO, In Part, to Process Payroll and Administer Certain Personnel Documents, Including But Not Limited to its Binding Arbitration Agreement, the DRP

TriNet is the Professional Employer Organization ("PEO") for Sierra. *See* Thompson Dec., at ¶ 2; Waibel Dec. at ¶ 4. As part of its role as a PEO, TriNet provides general administrative services, including payroll processing and providing access to certain personnel documents, to its clients/customers (such as Sierra). *Id.* Specifically, TriNet maintains a password protected online portal referred to as "TriNet Platform" that provides access to certain employment policies, records, and forms. Thompson Dec., at ¶ 4. Newly hired worksite employees of TriNet's clients/customers access TriNet Platform as part of TriNet's

onboarding process. Thompson Dec., at ¶ 7. Worksite employees with access to TriNet Platform and who receive payroll processed by TriNet retain their status as worksite employees of the client/customer company (such as Sierra), while TriNet acts as the PEO. *See* Thompson Dec. at ¶¶ 3, 6 and Ex. A §1. Sierra employees receive notice of the PEO relationship at the commencement of their employment. *See id.*

**B.    Plaintiff Accepted TriNet's DRP and Agreed to Arbitrate Any and All Claims Stemming from Her Employment**

As part of her employment with Sierra, Plaintiff accepted TriNet's TCA, which included the DRP, through her TriNet Platform account. Thompson Dec. at ¶¶ 10, 14 – 17 and Ex. A, B, and C. Thus, Plaintiff agreed that any disputes arising out of or relating to her employment with either TriNet or Sierra were subject to arbitration. *Id.* Specifically, the TCA and DRP executed by Plaintiff, provides, in pertinent part:

> [T]his DRP covers any dispute arising out of or relating to your co-employment with TriNet, including your TriNet co-employer, and/or arising out of or relating to your employment with your company, as well as any dispute with an employee, officer, or director of TriNet or of a TriNet customer (all of whom, in addition to TriNet customers, are intended to be beneficiaries of this DRP) ("covered dispute"), including, but not limited to, all claims whether arising in tort or contract and whether arising under statute or common law including, but not limited to, any claim of breach of contract, discrimination or harassment of any kind. The Federal Arbitration Act ("FAA") applies to this DRP. Any applicable internal procedures at your company or TriNet for resolving disputes (e.g., procedures in the TriNet Employee Handbook for complaining about or addressing complaints about misconduct), as well as the option of mediation, will continue to apply with the goal of resolving disputes before arbitration. This DRP will survive the termination of the employment relationship. **With only the exceptions described below, arbitration will be used instead of going before a court (for a judge or jury trial) and even in the situations described below, NO JURY TRIAL WILL BE PERMITTED (unless applicable law does not allow enforcement of a pre-dispute jury trial waiver in the particular circumstances presented).**
>
> ***
>
> Subject to the exceptions provided herein, this DRP is the full and complete agreement for resolution of covered disputes between you and TriNet (and its employees, officers, and agents), and between you and your company (and its employees, officers, and agents).

7

FP 54676883.1

***

By acknowledging below, I confirm that I have read and understand the contents of this TCA including, but not limited to, **the Dispute Resolution Protocol ("DRP"), which includes my agreement to mandatory arbitration of disputes arising out of or relating to my employment and a waiver of my right to a jury trial (except as specifically provided in the DRP)**. I understand and acknowledge that I have the responsibility to read and familiarize myself with the TCA, the TriNet Employee Handbook, any applicable State Notices, and any additional policies for my company, and I agree to abide by the terms and conditions set forth therein, including but not limited to the DRP.

Thompson Dec. at ¶ 10, 14 – 17 and Ex. A at §§8(a), 8(f), 9. (Emphasis in original).

The DRP expressly incorporates the Federal Arbitration Act, provides for the mutual selection of a neutral arbitrator, permits reasonable and adequate civil discovery, does not limit Plaintiff's ability to bring dispositive motions or present evidence, and states that the "arbitrator may award any remedy warranted under applicable law and will include a written opinion providing reasoned explanations for the decision." Ex. A. at §§8(a), 8(c), 8(d), and 8(e). The DRP also provides that "[i]n all cases where the law requires it, … TriNet['s] customer [here, Sierra] … will pay the fees of the arbitrator and the arbitration." *Id.* at §8(d).

## C. Defendant Sierra Requested that Plaintiff Stipulate to Arbitration Pursuant to the DRP, but Plaintiff Has Refused

Defendant Sierra requested that Plaintiff stipulate to arbitration pursuant to her obligations under the DRP. However, Plaintiff refused to comply with her obligations under the DRP and stipulate to arbitration. On April 28, 2025, in accordance with California *Code of Civil Procedure* section 1281, Defendant Sierra reminded Plaintiff that she was a party to a binding arbitration agreement and requested a phone call to meet and confer to discuss a joint stipulation to arbitrate her claims. Chinai Dec., at ¶ 3 and Ex. 2. On April 29, 2025, Defendant Sierra provided Plaintiff a copy of the DRP and a screenshot confirming Plaintiff's electronic acceptance of the TCA and DRP. *Id.* at ¶ 4 and Ex. 3.

On May 5, 2025, per Local Rule 7 – 3, counsel for Defendant Sierra spoke with counsel for Plaintiff, explained Defendant Sierra's position regarding the

8

FP 54676883.1

1   validity of the arbitration agreement, and requested that Plaintiff stipulate to

2   arbitration. Chinai Dec., at ¶ 5 and Ex. 2. Plaintiff's counsel stated that Plaintiff

3   would not agree to arbitration. *Id.* Thus, Defendant Sierra has been forced to file

4   the instant Motion to preserve and enforce its rights under the DRP.

5   **III.   THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION**

6   **OF PLAINTIFF'S CLAIMS**

7          With the FAA, 9 U.S.C. §1, *et seq.*, "Congress declared a national policy

8   favoring arbitration and withdrew the power of the States to require a judicial forum

9   for the resolution of claims which the contracting parties agreed to resolve by

10  arbitration." *Southland Corp. v. Keating* (1984) 465 U.S. 1, 10. The FAA creates

11  a general presumption in favor of arbitration and requires the enforcement of a

12  written agreement to arbitrate. 9 U.S.C. § 2; *see also AT&T Mobility LLC v.*

13  *Concepcion et ux.* (2011) 131 S.Ct. 1740 ("*AT&T Mobility*") ("The 'principal

14  purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced

15  according to their terms.'"); *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500

16  U.S. 20, 26. Indeed, as the Supreme Court noted in *AT&T Mobility*, it is "beyond

17  dispute that the FAA was designed to promote arbitration." *Id.* Courts have

18  consistently found that an agreement between an employer and an employee to

19  arbitrate employment-related disputes is valid and enforceable under the FAA. *See,*

20  *e.g., Circuit City Store, Inc. v. Adams* (2001) 532 U.S. 105; *see also EEOC v. Luce,*

21  *Forward, Hamilton & Scripps* (9th Cir. 2003) 345 F.3d 742 (agreement for

22  arbitration of employment claims are valid and enforceable).

23         Notably, the burden is on the party opposing arbitration to proffer evidence

24  demonstrating that such an agreement is invalid. *See, e.g., Green Tree Fin. Corp.*

25  *v. Randolph* (2000) 531 U.S. 79, 91-92. A court must interpret arbitration clauses

26  in light of the "liberal federal policy favoring arbitration" and resolve any doubts

27  concerning the scope of arbitrable issues in favor of arbitration. *See, e.g., AT&T*

28  *Mobility, supra,* 131 S.Ct. at 1744, 1745; *see also AT&T Tech., Inc. v.*

9

*Communication Workers of Am.* (1986) 475 U.S. 643, 650, *quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960) 363 U.S. 574, 582-83 ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.").

### A.     The FAA Governs the DRP

The FAA governs an arbitration agreement when the agreement "evidence[s] a transaction involving commerce." 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 111-119 (noting that the FAA applies generally to "all employment contracts" except those in the transportation industries).  In this case, the FAA governs the DRP.  Not only does the FAA apply generally to "all employment contracts" except those in the transportation industries (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 111-119), but the DRP expressly states that "the Federal Arbitration Act ('FAA') applies to this DRP." Ex. A at §8.  Furthermore, in this case, Sierra, which provides information technology services across the United States, is involved in commerce within the meaning of the FAA.  *See* Waibel Dec. at ¶ 3.

The FAA is important, because it "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 25, fn.32.  Accordingly, the relevant issues in connection with this Motion include: (1) "whether the parties are bound by an arbitration clause"; and (2) "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam, supra,* 537 U.S. at 83-85.

### B.     The Parties Are Clearly Bound by the DRP

In moving to compel arbitration of Plaintiff's claims, Defendant Sierra's burden of proof is minimal.  Specifically, Defendant Sierra only needs to prove, by

a preponderance of the evidence, that an agreement to arbitrate Plaintiff's claims exists. *See, e.g., Condee v. Longwood Mgmt. Corp.* (2001) 88 Cal.App.4th 215, 218-219. To satisfy this burden, Defendant Sierra may simply supply a copy of the agreement or recite its terms in its petition to compel arbitration. *See Id.* at 219; Cal. R. Ct. 371. Defendant Sierra has done so here by attaching the DRP. Thompson Dec., at ¶ 10 and Ex. A. Despite receiving a copy of the DRP, Plaintiff has refused to stipulate to arbitration.

The DRP expressly provides that its terms apply both to TriNet and to Plaintiff's company:

> [T]he DRP expressly requires that arbitration will be used instead of going before a court (for a judge or jury trial) . . . for any despite arising out of or relating to your employment with . . . your company, and for any dispute with an employee, officer, or director of TriNet or of a TriNet customer.
>
> ***
>
> [T]his DRP is the full and complete agreement for resolution of covered disputes between you and TriNet (and its employees, officers and agents), and between you and your company (and its employees, officers, and agents).

Ex. A at §§8, 8(f). Based upon the foregoing, the DRP indisputably references Sierra as the "company," thereby conferring Sierra standing to enforce the DRP as to Plaintiff's claims. *Id.* at §8.

## C.    The DRP Applies to All of Plaintiff's Causes of Action

As stated above, Plaintiff's FAC contains four causes of action, all of which are subject to the instant Motion, and all of which indisputably arise out of her employment. *See* Ex. 1. Specifically, Plaintiff alleges that she experienced retaliation and wrongful termination in the course of her employment. *See id.* As even a cursory review of the FAC makes clear, Plaintiff's causes of action unquestionably arise from her employment. *See id.* In fact, Plaintiff's claims necessarily require an employer-employee relationship. *See id.* Thus, the nature of Plaintiff's claims falls squarely within the purview of the DRP and therefore Plaintiff's claims should be compelled to arbitration pursuant to the FAA. *See* Ex.

11

1 and Ex. A at §8.

## IV. THE CALIFORNIA ARBITRATION ACT REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS

As discussed in Section III, *supra*, the DRP is expressly governed by the Federal Arbitration Act ("FAA").  Nevertheless, the DRP also conforms to the California Arbitration Act ("CAA") and satisfies each of the minimal requirements for enforceability under the CAA as set forth by the California Supreme Court in *Armendariz*.  Importantly, even if the factors set forth in *Armendariz* are considered and fully evaluated here, a plain reading of the DRP confirms that it exceeds the *Armendariz* requirements and is clearly enforceable.

### A. California Public Policy Supports Enforcement of the DRP

Mirroring the FAA, the California Arbitration Act requires courts to compel arbitration of any controversy covered by the terms of a valid written agreement to arbitrate.  Specifically, § 1281.2 of the California Code of Civil Procedure provides:

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, **the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists**. . . .

*Id*. (emphasis added); *see also Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 713.

California courts have consistently recognized this state's strong public policy in favor of enforcing arbitration agreements.  *See, e.g., McManus v. CIBC World Markets, Corp.* (2003) 109 Cal.App.4th 76, 85 ("[t]here is a public policy in favor of arbitration under . . . state law"); *Armendariz, supra,* 24 Cal.4th at 97 ("California law . . . favors enforcement of valid arbitration agreements"); *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (California has a "strong public policy in favor of arbitration").  Thus, arbitration is the preferred forum for

1  resolution of parties' disputes under California law.  *United Transp. v. Southern*
2  *Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808 ("Doubts as to whether an
3  arbitration clause applies to a particular dispute are to be resolved in favor of
4  sending the parties to arbitration"); *Bayscene Resident Negotiators v. Bayscene*
5  *Mobilehome Park* (1993) 15 Cal.App.4th 119, 127 ("Resolution of disputes by
6  arbitration however is strongly favored in this state.").

7        Consistent with the foregoing policy, Courts have observed that "arbitration
8  agreements should be liberally interpreted ***and arbitration should be ordered***
9  ***unless an agreement clearly does not apply to the dispute in question***."  *Oakland-*
10  *Alameda County Coliseum Authority v. CC Partners* (2002) 101 Cal.App.4th 635,
11  644 (overruled on other grounds) (emphasis added).  Put differently, "[d]oubts as
12  to whether the arbitration clause applies to a particular dispute are to be resolved in
13  favor of sending the parties to arbitration."  *United Transp. v. Southern Cal. Rapid*
14  *Transit Dist.* (1992) 7 Cal.App.4th 804, 808*; Coast Plaza Doctors Hospital v. Blue*
15  *Cross of California* (2000) 83 Cal.App.4th 677, 686 ("arbitration should be upheld
16  unless it can be said with assurance that an arbitration clause is not susceptible to
17  an interpretation covering the asserted dispute") (internal quotation marks omitted).
18  Indeed, courts "should indulge every intendment to give effect to an arbitration
19  agreement."   *Coast Plaza,* 83 Cal.App.4th at 686 (internal quotation marks
20  omitted).  Here, this Court must view the DRP executed by Plaintiff in accord with
21  California's strong presumption of enforceability of such agreements.

22        **B.    The DRP Exceeds the Minimum Armendariz Requirements**

23        In *Armendariz*, the California Supreme Court set forth five minimum
24  requirements for enforcement of arbitration agreements in the employment context.
25  Specifically, an arbitration agreement must: (1) provide for a neutral arbitrator; (2)
26  provide for more than minimal discovery; (3) require the arbitrator to issue a
27  written decision; (4) provide for the same remedies that would otherwise be
28  available to the employee in court; and (5) not require the employee to bear costs

1    unique to arbitration. *Armendariz, supra,* 24 Cal.4th at 102-13. Here, the DRP

2    unquestionably exceeds the minimum *Armendariz* requirements.

3         1.    <u>*The DRP Provides for a Neutral Arbitrator*</u>

4         The *Armendariz* court reiterated that a neutral arbitrator "is essential to ensuring

5    the integrity of the arbitration process." *Armendariz, supra*, 24 Cal.4th at 103. The

6    DRP provides for a neutral arbitrator. *See* Ex. A §8(c). In particular, the DRP

7    explicitly states:

8         > The arbitrator will be selected by mutual agreement of the parties and
         > will be an experienced attorney licensed in the state where the
         > arbitration will be held or retired judicial officer who served in that state
9         > as a judge or another qualified individual.

10

11   *Id.* As such, the DRP meets the neutral arbitrator requirement.

12        2.    <u>*The DRP Provides for More Than Minimal Discovery*</u>

13        *Armendariz* further required that arbitration proceedings provide "for more

14   than a minimal amount of discovery" and that "adequate discovery is

15   indispensable[.]" *Armendariz, supra,* 24 Cal.4th at 103, 104-05. Here, the DRP

16   provides for much more than minimal discovery. Specifically, the DRP provides

17   that "the parties will have the right to . . . conduct reasonable and adequate civil

18   discovery . . . The specific provisions of this DRP and the applicable rules of JAMS

19   (or any other dispute resolution provider agreed to by the parties) will direct the

20   arbitrator in decisions regarding conducting the arbitration." Ex. A at §8(d). Thus,

21   the DRP unquestionably provides for "more than a minimal amount of discovery."

22   *See Armendariz, supra,* 24 Cal.4th at 103, 104-05. Moreover, the DRP does not

23   contain language limiting any parties' ability to conduct discovery (as in

24   *Armendariz*). *Id.* Thus, the DRP exceeds the *Armendariz* requirement of providing

25   more than a minimal amount of discovery.

26

27

28   ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND STAY OR DISMISS THE PROCEEDINGS
FP 54676883.1

3.    *The DRP Requires the Arbitrator to Issue A Written Reasoned Opinion*

The Supreme Court in *Armendariz* also held that "an arbitrator . . . must issue a written arbitration decision that will reveal . . . the essential findings and conclusions on which the award is based" so that an arbitrator is not "essentially free to disregard the law." *Armendariz, supra,* 24 Cal.4th at 107.  Consistent with *Armendariz*, the DRP expressly states that the arbitrator must "include a written opinion providing reasoned explanations for the decision." Ex. A. at §8(e). As such, the DRP also meets the *Armendariz* requirement for a written reasoned opinion. *See Armendariz, supra,* 24 Cal.4th at 107.

4.    *The DRP Does Not Limit Plaintiff's Available Remedies*

The *Armendariz* court recognized that "the principle that an arbitration agreement may not limit statutorily imposed remedies . . . appears to be undisputed." *Armendariz, supra,* 24 Cal.4th at 103.  Indeed, the *Armendariz* court held that the arbitration provision that it examined was unenforceable because of the agreement's limitation on the plaintiff's remedies. *Id.* at 103 – 04. Specifically, the *Armendariz* arbitration provision limited the plaintiff's damages to lost wages from the time of discharge until the time of the arbitration award. *Id.*  In contrast, the DRP does not contain language that limits any of Plaintiff's remedies in any way, and in fact, the DRP provides that the "arbitrator may award any remedy warranted under applicable law[.]" Ex. A at §8(e). Accordingly, the DRP satisfies the *Armendariz* requirement to not limit available remedies.

5.    *The DRP Does Not Require Plaintiff to Pay Any Costs*

*Armendariz* also concluded that the employer should bear the costs unique to arbitration to "ensure that employees bringing . . . claims will not be deterred by costs greater than the usual costs incurred during litigation." *Armendariz, supra,* 24 Cal.4th at 111-12.  Here, the DRP does not contain any language mandating Plaintiff to pay for any of the arbitration costs.  To the contrary, the DRP expressly

provides: "[i]n all cases where the law requires it, TriNet (and if applicable, any TriNet customer or employee(s) of either TriNet or a TriNet customer [here, Sierra] interested in enforcing this DRP for its/their own benefit), will pay the fees of the arbitrator and the arbitration." Ex. A at §8(d). Thus, the DRP satisfies the *Armendariz* requirement that plaintiffs not bear costs for arbitration.

### C. Plaintiff's Electronic Signature of the DRP Is Not an Impediment to Its Enforcement

Plaintiff's electronic signature of the DRP is no barrier to its enforcement as a valid contract. *See* California Uniform Electronic Transactions Act ("UETA"), *Civil Code* § 1633.1 *et seq*. Under the UETA, an electronic record satisfies the requirement that a record be in writing. *Civil Code* § 1633.7, subd. (c). More succinctly, the UETA provides: "If a law requires a signature, an electronic signature satisfies the law." *Id.*, § 1633.7, subd. (d). Moreover, the UETA states that a "signature" on a contract "may not be denied legal effect or enforceability solely because it is in electronic form." *Id.*, §1633.7, subdivisions (a) and (c).

The UETA further provides that "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. ***The act of the person may be shown in any manne***r[.]" *Id.*, § 1633.9, subd. (a) (emphasis added); *Rickards v. United Parcel Service, Inc.* (2012) 206 Cal.App.4th 1523, 1529. Importantly, the UETA specifically allows a proponent to prove an individual signed an on-line agreement or document by "a showing of the efficacy of any security procedure" for the on-line signing process. *Id.*, §1633.9(a).

Here, the accompanying declaration of TriNet's Director of Global Security – Cyber Defense details that TriNet's TriNet Platform is "password-protected," with individual passwords created by, and known only to, the employee and no one else. Thompson Dec. at ¶¶ 4, 7 – 8. Worksite employees, such as Plaintiff, are required to enter this unique password to access his or her TriNet Platform account, and to electronically sign the DRP. *Id.* at ¶¶ 4, 7 – 17. No other individual has

16

access to Plaintiff's passwords. *Id.* at ¶ 8. Moreover, to electronically sign the DRP, worksite employees—including Plaintiff—are required to enter a valid e-mail address and then click on the button marked "Accept." *Id.* at ¶¶ 4, 9 – 17. The foregoing TriNet Platform procedure is precisely the type of "security procedure" contemplated by the UETA as sufficiently proving that the resulting electronic signature is valid and legally binding.

## V.    ANY PROVISION DEEMED UNCONSCIONABLE SHOULD BE SEVERED, AND THE REMAINDER OF THE AGREEMENT ENFORCED

If this Court determines that any term of the DRP is unconscionable (which it should not), the DRP should still be enforced.  Specifically, pursuant to the *Civil Code*, if a court finds any provision of an arbitration agreement unconscionable, then the court should sever the offending language and enforce the remainder of the contract. Cal. *Civil Code* § 1670.5; *see also Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075 – 1076 ("*Little*").  In *Little,* for example, the California Supreme Court upheld an arbitration agreement after severing an unconscionable term, noting that removing offending language is preferred over refusing to enforce an otherwise valid arbitration agreement.  *Id.*  Similarly, in *McManus v. CIBC World Markets* (2003) 109 Cal.App.4th 76, the court severed certain sections of an arbitration agreement that it determined to be unconscionable, but enforced the remaining provisions because the agreement was not "so 'permeated' with unconscionable provisions that it cannot be saved."  *Id.*, at 102.

Here, none of the provisions of the DRP are unconscionable or unenforceable.  Moreover, the DRP expressly provides that "[i]f any portion of this DRP is determined to be unenforceable, the remainder of this DRP still will be enforceable[.]" Ex. A at ¶8(f).  Where, as here, the parties have agreed to a severance clause, any unenforceable provisions should be severed, leaving the remainder of the agreement in full force and effect.  *See e.g., SI V, LLC v. FMC*

17

FP 54676883.1

*Corp.* (N.D. Cal 2002) 223 F. Supp. 2d 1059, 1063 (holding that when the parties' to an agreement have included a severance clause, an unenforceable judicial review provision in an arbitration agreement may be severed while enforcing the remaining provision of the agreement).    Moreover, as explained in *Little* and *McManus*, the Court is authorized and encouraged to sever any provision that it deems to be unconscionable, rather than invalidate the entire agreement. See *Little, supra,* 29 Cal.4th at 1075 – 1076; *McManus, supra,* at 109 Cal.App.4th at 102. Thus, to the extent that this Court finds any provisions of the DRP to be unconscionable or unenforceable (again, it should not), such provisions should be severed with the remainder of the agreement upheld and enforced.

## VI.    THIS ENTIRE ACTION SHOULD BE DISMISSED OR, IN THE ALTERNATIVE STAYED PENDING COMPLETION OF BINDING ARBITRATION.

Because application of the FAA in this case mandates compelling Plaintiff's employment-related claims against Defendants to binding arbitration, this Court does not have subject matter jurisdiction to adjudicate these claims.  *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) ("the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.") Therefore, upon ordering that Plaintiff's claims be submitted to arbitration, this Court should dismiss the claims but retain jurisdiction to enforce the arbitration award.

Alternatively, pursuant to 9 U.S.C. § 3, Defendants move this court for an order staying this action pending completion of arbitration.  The statute provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on

FP 54676883.1

application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

As detailed above, Plaintiff is contractually obligated to submit her claims against Defendant Sierra to binding arbitration. As noted by the Ninth Circuit in *Johnmohammadi v. Bloomingdale's, Inc.*, "a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (citing *Sparling v. Hoffman Constr. Co.*, 864 F. 2d 635, 638 (9th Cir. 1988)).

## VII.    CONCLUSION

As thoroughly demonstrated above, Plaintiff can neither overcome the presumption in favor of arbitration nor meet her burden of demonstrating that the DRP is invalid or inapplicable. Thus, this Court should grant Defendant Sierra's Motion in its entirety and compel Plaintiff's claims to binding arbitration. Moreover, the Court should dismiss Plaintiff's civil action, or in the alternative stay the superior court action pending the completion of arbitration.

DATED:  May 7, 2025                    Respectfully submitted,

                                       FISHER & PHILLIPS LLP


                              By:    */s/ Lisa Chinai*
                                     Colin P. Calvert
                                     Lisa Chinai
                                     Attorneys for Defendants
                                     SIERRA DEVELOPMENT LLC and
                                     THE RIVERSIDE COMPANY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS THE PROCEEDINGS

FP 54676883.1

**CERTIFICATE OF SERVICE**

I, the undersigned, am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 2050 Main Street, Suite 1000, Irvine, California 92614.

On **May 7, 2025**, I served the foregoing document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SIERRA DEVELOPMENT LLC'S MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS THE PROCEEDINGS** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

Jon Y. Vanderpool                          Attorneys for Plaintiff,
Dyland Griffith                              MELISSA SEWELL
VANDERPOOL GRIFFITH LLP
401 B Street, Suite 2000                    Email:  jon@vgfirm.com
San Diego, CA 92101
Telephone: (619) 952-0855

☐    **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒    **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website.  The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed **May 7, 2025** at Irvine, California.

Katie Costantino                    By: _____
_____
Print Name                                          Signature

FP 54676883.1